ELLIOTT v DEPARTMENT OF SOCIAL SERVICES

Docket No. 61282. Submitted December 7, 1982, at Lansing.—Decided
March 10, 1983.

Luann Elliott was receiving public assistance when she fell two
months behind on her mortgage payment. She applied for
emergency assistance from the Department of Social Services.
Elliott allegedly was told by an employee of the department
that she would not be entitled to emergency assistance to save
her home unless the home went into foreclosure. Relying on
these assurances, Elliott made no payments and took no other
action to prevent foreclosure. Elliott's home was sold through
foreclosure proceedings at a sheriff's sale. She then filed suit
against the Department of Social Services in the Court of
Claims, alleging that the defendant's agents and employees
were negligent and that they acted wilfully, maliciously, inten-
tionally, and in conscious disregard of the department's Assis-
tance Payment Manual by holding back emergency assistance
payments for home arrearages when such payments would
have saved her home from foreclosure. Plaintiff further alleged
that defendant's acts and omissions violated her constitutional
rights of due process and equal protection. The trial court
granted summary judgment in favor of defendant on the basis
of governmental immunity, finding that plaintiff's complaint
stated only a cause of action for negligence, Robert Holmes
Bell, J. Plaintiff appeals. *Held:*

1. Plaintiff's allegations sound in negligence, not in inten-
tional misconduct. Plaintiff's complaint failed to allege inten-
tionally tortious activity sufficient to take the activity outside
the ambit of governmental immunity.

2. Plaintiff's claim for consequential damages based on

REFERENCES FOR POINTS IN HEADNOTES

[1] 72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*
   79 Am Jur 2d, Welfare Laws § 73.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 310.
[3] 79 Am Jur 2d, Welfare Laws §§ 53 *et seq.,* 73.
[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 79.

breach of an implied contract does not state facts in avoidance of governmental immunity.

3. Plaintiff has failed to state a cause of action for denial of equal protection.

Affirmed.

1. SOCIAL SERVICES — GOVERNMENTAL IMMUNITY.

Protection of and provision for the needy by the Department of Social Services pursuant to the Social Welfare Act is a governmental function protected by governmental immunity (MCL 400.1 *et seq.*, 691.1407; MSA 16.401 *et seq.*, 3.996[197]).

2. GOVERNMENTAL IMMUNITY — PLEADING.

The criterion to be employed in determining whether governmental immunity applies in a given case in which it is claimed that there was tortious activity taking the activity outside the ambit of governmental immunity is whether the plaintiff has pleaded facts showing tortious activity which is outside the exercise or discharge of the governmental function; merely characterizing activity as wilfull, intentional, and in conscious disregard of the consequences is not dispositive.

3. SOCIAL SERVICES — GROSS ERRORS — LIABILITY OF DEPARTMENT OF SOCIAL SERVICES.

Imposition of liability for gross errors in determining eligibility or failure to process applications or pay benefits as promised would constitute an unacceptable interference with the ability of the Department of Social Services to carry out its legislative function and meet its ever-increasing caseload demand.

4. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS — ACTS OF OMISSION — ACTS OF COMMISSION.

A claim cannot be characterized as one for an intentional tort for purposes of determining that the tort takes the activity outside the ambit of governmental immunity where the complained-of act is one of omission rather than commission.

*Shrauger & Dunn, P.C.* (by *Michael J. Cantor),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janis Meija* and *Fernando C. Gomez,* Assistants Attorney General, for defendant.

Before: BRONSON, P.J., and T. M. BURNS and ALLEN, JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary judgment to defendant pursuant to GCR 1963, 117.2(1) for failure to state facts in her complaint in avoidance of governmental immunity.

On May 28, 1981, plaintiff filed a suit in the Court of Claims against defendant State of Michigan, Department of Social Services (DSS). Plaintiff alleged that on June 21, 1978, she applied for emergency assistance from DSS. She advised a DSS employee that she had not made any mortgage payments since April, 1978, and she showed the employee a letter warning plaintiff that foreclosure of the mortgage was imminent.

Plaintiff alleged that she qualified for emergency assistance and was repeatedly informed from July through September, 1978, that the payments would be forthcoming. Plaintiff was subsequently informed on September 27, 1978, by a DSS employee that she would not be entitled to emergency assistance to save her home unless the home went into foreclosure. Relying on these assurances, plaintiff made no payments and took no other action to prevent foreclosure. Payments were never made by DSS. Plaintiff's home was sold through foreclosure proceedings at a sheriff's sale on April 19, 1979.

Plaintiff alleged that defendant's agents and employees were negligent and that they acted "wilfully, maliciously, intentionally and in conscious disregard of the Assistance Payment Manual" by holding back emergency assistance payments for home arrearages when such payments would have saved the home from foreclosure. Fur-

ther, plaintiff alleged that defendant's acts and omissions violated her constitutional rights of due process and equal protection.

DSS moved for and was granted summary judgment in an order dated August 27, 1981, on the basis of governmental immunity, the court finding that plaintiff's complaint stated only a cause of action for negligence. The court denied plaintiff's motion for rehearing at the conclusion of argument on October 28, 1981. On appeal, plaintiff argues that the complaint stated a cause of action against defendant in avoidance of governmental immunity under three theories, which we discuss *seriatim.*

I

*Did plaintiff, by alleging intentional misconduct in the denial of her application for emergency assistance benefits, state a cause of action which is not barred by governmental immunity?*

The facts plaintiff pled which are pertinent to this issue are as follows:

"That the defendant's agents or employees were negligent in the following respects:

"a) by not processing the claim for emergency assistance; "b) by not adequately supervising workers to be sure claims for assistance were properly processed.

"That defendant, by and through its agents or employees was grossly neglectful in that said agents or employees wilfully, maliciously, intentionally and in conscious disregard of the Assistance Payment Manual, Item 700(4) held back emergency assistant payments for the home arrearage when such assistance would have saved the home from foreclosure."

Apparently plaintiff accepts the proposition that

the Department of Social Services' protection of and provision for the needy pursuant to the Social Welfare Act, MCL 400.1 *et seq.;* MSA 16.401 *et seq.,* is a governmental function under MCL 691.1407; MSA 3.996(107),[1] and thereby protected by governmental immunity. See *Trommater v State of Michigan,* 112 Mich App 459; 316 NW2d 459 (1982). Plaintiff, however, argues that she has alleged intentionally tortious activity, taking the activity outside the ambit of governmental immunity. Such acts are outside the exercise or discharge of a governmental function. *McCann v State of Michigan,* 398 Mich 65; 247 NW2d 521 (1976); *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979). The Supreme Court's holdings as to governmental liability for intentional torts have received thorough consideration by our Court in two recent opinions, *Randall v Delta Charter Twp,* 121 Mich App 26; 328 NW2d 562 (1982), and *Smith v State of Michigan,* 122 Mich App 340; 333 NW2d 50 (1983).[2] The *Randall* opinion emphasizes, and com-

---

[1] MCL 691.1407; MSA 3.996 (107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

[2] In *Randall,* the plaintiff sued the township for the failure of its agents to enforce the zoning ordinance. The plaintiff's decedent drowned in an inlet which was allegedly maintained in violation of the local zoning ordinance. The Court rejected the plaintiff's allegation that the township committed an intentional tort by wilfully refusing to enforce a zoning ordinance despite their knowledge that a violation had occurred as insufficient to state a cause of action in avoidance of governmental immunity. In *Smith* the plaintiff alleged negligent, reckless, and intentional breaches of the state's duty to care for, treat, and educate the plaintiff, who was confined in state institutions for the mentally handicapped most of his life. The plaintiff further alleged that he had been falsely imprisoned by the state since his institutional commitment was not in accordance with applicable law. The Court did not address the claim for intentional breach

mon sense indicates, that negligence is not transformed into an intentional tort by merely alleging that defendant's activity was intentional, wilful, and in conscious disregard of the consequences. Otherwise governmental immunity from tort liability would be eliminated. As clarified by *Randall* and *Smith's* careful analysis, the criterion employed by a majority of the Supreme Court in determining whether governmental immunity applies is whether the plaintiff has pleaded facts showing tortious activity which *is outside the exercise or discharge of the governmental function.* Merely characterizing activity as "wilful", "intentional", and "in conscious disregard of the consequences" is not dispositive.

In accordance with the sound analysis in *Randall, supra,* we believe that a decision by DSS as to an applicant's eligibility for governmental benefits and payment of benefits in accordance with such decision is basic to the operation of the Department of Social Services and the discharge of its duties under the Social Welfare Act. We sympathize with both the plight of the harried DSS assistance payments worker and the applicant who has suffered as a result of the system's inability to meet the client's needs. However, we believe that liability for gross errors in determining eligibility or failure to process applications or pay benefits as promised would constitute an "unacceptable interference" with DSS's ability to carry out its legislative function and meet its ever-increasing caseload demand.

We also agree with defendant that "intentional failure to pay government benefits" has never been recognized before as an intentional tort. We

of duty since the issue had been abandoned on appeal. The claim for false imprisonment was remanded for further proceedings.

support the *Randall* panel's limitation on the characterization of intentional torts:

"The Supreme Court's decisions concerning the avoidance of governmental immunity where intentional torts are involved relate to torts such as assault, *Lockaby, supra,* and intentional interference with economic relations, defamation and slander, *McCann, supra.* This Court has also ruled that immunity is not available where claims such as conversion, *Willis v Ed Hudson Towing, Inc,* 109 Mich App 344; 311 NW2d 776 (1981), trespass, *Madajski v Bay County Dep't of Public Works,* 99 Mich App 158; 297 NW2d 642 (1980), and other similar claims are involved. All of these decisions have involved claims concerning activities which have traditionally been regarded as intentional torts. In our opinion, for purposes of determining governmental immunity, where the complained-of act is one of omission, rather than commission, the claim cannot be characterized as an intentional tort." *Randall,* p 26.

While in her appellate brief plaintiff, in essence, alleges an intentional act by DSS, intentional misrepresentation of its intent to pay benefits, our careful review of the complaint, trial briefs, and argument reveal that no such basis was set out below.

The gravamen of plaintiff's claim below was that DSS intentionally denied her emergency assistance benefits even though she was eligible under the criteria set forth in the Assistance Payments Manual. We agree with the trial court that plaintiff's allegations sound in negligence, albeit gross negligence. As stated by the trial court: "[M]erely by calling a horse a cow, that doesn't make it a cow. It still remains a horse; Merely calling it intentional misconduct under the facts and circumstances does not make it rise to that particular level."

## II

*Did plaintiff, by alleging "detrimental reliance",
state a cause of action which is not barred by
governmental immunity?*

Plaintiff alleges that she is entitled to consequential damages, apparently under a theory of breach of an implied contract or quasi-contractual duty. Apparently, plaintiff claims that defendant breached a quasi-contractual duty by failing to provide her with emergency assistance after one of its employees told her that she would receive such assistance. Plaintiff alleged that she relied on the department's representation that assistance would be forthcoming and did not seek alternative arrangements for house payments, resulting in eventual foreclosure. We believe that plaintiff's claim for breach of implied contract does not state facts in avoidance of governmental immunity. An implied contract, which arises where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated, *Rocco v Dep't of Mental Health,* 114 Mich App 792, 799; 319 NW2d 674 (1982), simply does not apply to the relationship between DSS and plaintiff. Further, plaintiff's reliance on *Tompkins v Dep't of Social Services,* 97 Mich App 218; 293 NW2d 771 (1980), is misplaced. While in *Tompkins* the Court stated that the Court of Claims is the proper forum for an action against the Department of Social Services for consequential damages based on "detrimental reliance", the Court neither awarded the plaintiff consequential damages nor discussed the plaintiff's entitlement to such damages.

### III

*Is the denial of public assistance actionable as a violation of plaintiff's constitutional rights?*

Plaintiff argues that DSS has created two classes of persons, those who are eligible for emergency assistance and are granted such assistance, and those who are eligible for emergency assistance and are not granted such assistance. Plaintiff argues that DSS's failure to grant emergency assistance to all who are eligible denies her the equal protection of the laws. However, plaintiff cites no statute, rule, or policy creating or promoting such classifications. The criteria for eligibility for emergency assistance is set out in Item 700 of the Assistance Payments Manual; plaintiff makes no claim that eligibility determinations are based on impermissible criteria. Absent a governmental classification, plaintiff has failed to state a cause of action for denial of equal protection. If an applicant is deemed qualified for emergency benefits under the applicable criteria, presumably such benefits will be paid. If payment is not forthcoming, the applicant may request a hearing pursuant to MCL 400.9; MSA 16.409 and MCL 400.37; MSA 16.437.

Additionally, plaintiff claims that, by its action, DSS has deprived her of property, *i.e.,* her house, without due process of law. It is the mortgagee, not DSS, who has deprived plaintiff of her house. As to DSS's failure to pay emergency assistance benefits, plaintiff cites no cases entitling her to a hearing prior to a determination of her eligibility for benefits. If she is deemed ineligible, payments are not paid or DSS fails to investigate and determine her eligibility, she may appeal the matter pursuant to MCL 400.9; MSA 16.409 and MCL 400.37; MSA 16.437. Finally, we believe that the standards set out in Item 700 of the Assistance

Payments Manual for determining whether an applicant should be granted emergency assistance benefits are as precise as the situation requires.

For the foregoing reasons, the order granting summary judgment to defendant is affirmed. No costs, a public question being involved.