SHUNK v STATE OF MICHIGAN (AFTER REMAND)

Docket No. 67737. Submitted December 7, 1983, at Lansing.—Decided March 6, 1984. Leave to appeal applied for.

Ray Shunk and others brought an action against the State of Michigan and the Department of Public Health alleging that the defendants knew, or should have known, that exposure to PBB (polybrominate biphenyl) created an immediate and serious hazard to the plaintiffs and that the defendants were negligent and committed various intentional torts. The Court of Claims, Robert Holmes Bell, J., granted summary judgment for the defendants based on governmental immunity. The plaintiffs appealed and the Court of Appeals reversed the decision of the Court of Claims and remanded the case to the Court of Claims for reinstatement of the counts alleging intentional torts. *Shunk v Michigan,* 97 Mich App 626; 296 NW2d 129 (1980). On remand, the Court of Claims granted the defendants a summary judgment on the counts alleging intentional torts. The plaintiffs appealed again. *Held:*

The trial court did not err in granting summary judgment for the defendants. The plaintiffs failed to present any factual evidence in support of their claim that the defendants had committed an intentional tort. Negligence does not become an intentional tort merely because the government acted wilfully or failed to do a particular act, because such a rule would virtually eliminate the doctrine of governmental immunity; instead, the government's tortious activity must fall outside the exercise or discharge of a governmental function.

Affirmed.

1. GOVERNMENTAL IMMUNITY — CAUSE OF ACTION — PLEADINGS.

A complaint against a governmental entity engaged in a governmental function must plead facts in avoidance of governmental immunity to state an actionable claim.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 310.
[2, 3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 79.
[4] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

2. GOVERNMENTAL IMMUNITY — NEGLIGENCE — INTENTIONAL TORTS.

Governmental negligence does not become an intentional tort merely because the government acted wilfully or intentionally in doing or failing to do a particular act, since such a rule would virtually eliminate the doctrine of governmental immunity; instead, the government's tortious activity must fall outside of the exercise or discharge of a governmental function.

3. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

Generally, the intentional tort exception to the governmental immunity doctrine has been limited to traditional intentional torts and acts of omission are not generally characterized as intentional torts.

4. JUDGMENTS — SUMMARY JUDGMENT — COURT RULES.

A motion for summary judgment grounded on the absence of a genuine issue as to any material fact is designed to test whether there is factual support for a claim (GCR 1963, 117.2[3]).

*Sablich, Ryan, Bobay & Pollok, P.C.* (by *Steven J. Pollok),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Philip J. Smith,* Assistant Attorney General, for defendants.

AFTER REMAND

Before: M. J. KELLY, P.J., and CYNAR and J. C. KINGSLEY,* JJ.

PER CURIAM. Plaintiffs appeal as of right from an order of summary judgment dismissing the last remaining count of what was once a six-count complaint. Summary judgment was granted pursuant to GCR 1963, 117.2(3). We affirm.

Plaintiff class is composed of current and former employees of the now defunct Michigan Chemical Company, Velsicol Chemical Corporation and

---

* Circuit judge, sitting on the Court of Appeals by assignemnt.

Northwest Industries, Inc. In the 1970's, Michigan Chemical, Velsicol, and Northwest all manufactured and distributed from St. Louis, Michigan, the chemical polybrominated biphenyl, the infamous PBB. In this action, plaintiffs allege that they were injured as the result of continuous occupational exposure to that toxic and poisonous chemical, "harmful to humans when inhaled or ingested". Plaintiffs further allege that their injuries are in part attributable to defendants' wilful and intentional failure or refusal to take state action under MCL 408.1031; MSA 17.50(31). That statute provides in relevant part:

"When and as soon as a department representative determines that an imminent danger exists in a place of employment, the department representative shall inform the employer and the affected employees of a determination of the imminent danger. The department representative immediately shall recommend to the appropriate department director that an order be issued to require that steps be taken as may be necessary to avoid, correct, or remove the imminent danger.

* * *

"The order shall prohibit the employment or presence of an individual in locations or under conditions where imminent danger exists, except individuals whose presence is necessary to avoid, correct, or remove the imminent danger in a safe and orderly manner."

This case comes to us with an appellate history. See *Shunk v Michigan,* 97 Mich App 626; 296 NW2d 129 (1980); *Shunk v Northwest Industries* (Docket No. 54726, decided December 8, 1981 [unreported]), *lv den* 414 Mich 921 (1982). In the 1980 opinion, a panel of this Court held that the trial court had erred in dismissing all of plaintiffs' counts on grounds of governmental immunity. Without elaboration, this Court held that plaintiffs

had alleged both intentional torts and negligence against the defendants and that because intentional torts were not within the exercise or discharge of a governmental function, those counts alleging intentional torts were to be reinstated. 97 Mich App 628 (but, see the dissenting opinion of R. B. Burns, J).

Since the release of that 1980 decision, this Court has had several occasions on which to consider and interpret the intentional tort exception to the doctrine of governmental immunity. After consideration of those cases and the briefs and arguments submitted here, we are now persuaded that plaintiffs have failed, after a more than adequate period of discovery, to come forward with any evidence showing that there is a genuine issue of material fact as to their intentional tort claims.

None of the parties in this case dispute that defendants, in enforcing the Michigan Occupational Safety and Health Act, are involved in a governmental function within the meaning of that term under the governmental immunity statute, MCL 691.1407; MSA 3.996(107). We agree that the particular activity engaged in by the defendants here, the prevention and regulation of imminently dangerous conditions at Michigan workplaces, constitutes a governmental function under any of the three tests currently advanced by various justices of the Supreme Court. See *Ross v Consumers Power Co,* 415 Mich 1; 327 NW2d 293 (1982), for a synopsis of these tests. Since plaintiffs are pursuing a tort claim against a governmental entity engaged in a governmental function, it is the burden of plaintiffs to plead and develop facts in avoidance of the defense of immunity. *Graves v Wayne County,* 124 Mich App 36, 40; 333 NW2d 740 (1983).

Plaintiffs' sole claim is that defendants acted intentionally and wilfully in refusing to take action under MCL 408.1031; MSA 17.50(31). However, as this Court has recently explained, negligence does not become an intentional tort merely because the government acted wilfully or intentionally in doing or failing to do a particular act, since such a rule would virtually eliminate the doctrine of governmental immunity. *Elliott v Dep't of Social Services,* 124 Mich App 124, 128-129; 333 NW2d 603 (1983). Instead, the government's tortious activity must fall outside the exercise or discharge of a governmental function. *Elliott v Dep't of Social Services, supra,* p 129; *Smith v Michigan,* 122 Mich App 340, 345; 333 NW2d 50 (1983). Generally, the intentional tort exception to the governmental immunity doctrine has been limited to traditional intentional torts, *Randall v Delta Charter Twp,* 121 Mich App 26, 34; 328 NW2d 562 (1982), and acts of omission rather than commission are not generally characterized as intentional torts. *Elliott v Dep't of Social Services, supra,* p 130, citing *Randall v Delta Charter Twp, supra,* p 34.

Since we are reviewing a motion for summary judgment based on the absence of any genuine issue of material fact, we must determine whether there is any factual support in the record for plaintiffs' claim of an intentional tort. *Maki v Copper Range Co,* 121 Mich App 518, 522; 328 NW2d 430 (1982), *lv den* 417 Mich 1030 (1983). We find none.

Nearly four years after the filing of the initial complaint, the only "facts" or "evidence" developed by the plaintiffs in support of their claim are those that may be gleaned from plaintiffs' response to defendants' first and only set of interrogatories.

However, plaintiffs' response is essentially a re-statement of the vague and general allegations originally set forth against the state in the complaint. For example, plaintiffs respond that defendants knew of the dangers of PBB at the plant site because of "numerous complaints to the State of Michigan and agencies of the state". No dates or names regarding these complaints are supplied. Similarly, plaintiffs respond that the level of PBB at the plant site was "hazardous" but fail to provide or refer to any quantitative measures, dates, test results, etc., in support. The only other evidence in the record involving the state's involvement with PBB complaints at the Michigan Chemical plant are affidavits filed by the defendants in support of their motion for summary judgment which we now review. Those affidavits reveal that defendants first became aware of possible dangers of PBB inhalation at the plant site in 1974. Investigations were conducted and the state concluded that there was no reason to believe that the levels of PBB discovered at the site were dangerous or toxic when inhaled through the mandatory respirator worn by employees. The state further inquired about the health of the Michigan Chemical Company employees, reviewed the company's illness and injury log and examined two employees who worked in the PBB contaminated areas. No serious health problems were uncovered. Plaintiffs have failed to present any facts contradicting defendants' affidavits and corresponding reports and documents.

Given plaintiffs' failure to present any factual evidence in support of their claim that defendants had committed an intentional tort, the trial court did not err in granting summary judgment under GCR 1963, 117.2(3).

We note that our decision does not leave employees without a remedy where there exists an imminently dangerous condition at the workplace. MCL 408.1031(4); MSA 17.50(31)(4) allows the employee to bring an action for a writ of mandamus in circuit court against the state, compelling the state to seek abatement of the dangerous condition. We do not, however, believe that MCL 408.1031(4); MSA 17.50(31)(4) creates a cause of action otherwise barred under the doctrine of governmental immunity.

Affirmed.