## McCRACKEN v REDFORD TOWNSHIP

Docket No. 103032. Submitted January 19, 1989, at Detroit. Decided April 4, 1989.

Jimmie Lee McCracken and Mary Jane McCracken brought an action in the Wayne Circuit Court against defendant, Redford Township and the Redford Township Water Department, after Jimmie Lee McCracken was injured when the ground between the sidewalk and curb in front of their home collapsed due to an electrolysis leak in the water main. The trial court, Charles Kaufman, J., granted summary disposition to defendant on plaintiffs' negligence, strict liability and intentional nuisance claims. Plaintiffs appealed from the order granting summary disposition on their intentional nuisance claim.

The Court of Appeals *held:*

1. There is an intentional nuisance exception to the doctrine of governmental immunity.

2. An omission to act can be the basis of an intentional nuisance action.

3. A genuine issue of material fact did not exist on the intent required for an intentional nuisance claim. The requisite intent was not established. There was no evidence that defendant either knew or should have known that a dangerous condition existed beneath plaintiffs' property.

Affirmed.

1. Governmental Immunity — Intentional Nuisance.

There is an intentional nuisance exception to the doctrine of governmental immunity.

2. Nuisance — Intentional Nuisance — Omissions.

An action charging an intentional nuisance may be based upon an omission to act.

### References

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 159 *et seq.;* Nuisances §§ 32, 33, 55.

Rule of municipal immunity from liability for acts in performance of governmental functions as applicable to personal injury or death as result of a nuisance. 56 ALR2d 1415.

3. NUISANCE — NUISANCE IN FACT.

> A nuisance in fact is actionable by reason of circumstances and surroundings; an act may be found to be a nuisance in fact where its natural tendency is to create danger and inflict injury to persons and property.

4. NUISANCE — NUISANCE IN FACT — INTENTIONAL NUISANCE.

> A nuisance in fact is intentional if the creator intends to bring about the conditions which are in fact found to be a nuisance; to establish intent, the plaintiff must show that the defendant created or continued the condition causing the nuisance while he knew or must have known that injury was substantially certain to follow; it is not enough that the defendant knew that harm might result.

*Freilich, Schwab & Stuart* (by *Laurel A. Stuart*), for plaintiffs.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Bernard P. McClorey* and *Marcia L. Howe*), for defendant.

Before: MCDONALD, P.J., and DOCTOROFF and NEFF, JJ.

PER CURIAM. Plaintiffs appeal as of right from a Wayne Circuit Court order of August 10, 1987, granting defendant's motion for summary disposition on the basis that there was no genuine issue of material fact as to whether defendant's construction and maintenance of its water system constituted an intentional nuisance. We affirm.

During the summer of 1982, plaintiffs and their children moved into their Redford Township home. On July 6, 1982, while Jimmie Lee McCracken was mowing his lawn, the ground between the sidewalk and curb collapsed underneath his feet and he fell into a water-filled hole, up to his chest. His feet never touched bottom. He was able to pull himself out by grabbing the cement curb and the lawn mower handle. As a result of this accident,

McCracken suffered a sciatic injury and probable herniated disc.

McCracken immediately contacted defendant Redford Township Water Department and within fifteen minutes defendant's work crew had barricaded the hole in plaintiffs' lawn. The area was inspected and repaired by defendant the next day. Discovery revealed that the ground collapsed due to an electrolysis leak in the water main.

Plaintiffs filed this lawsuit on May 31, 1984, alleging negligence and nuisance. On October 25, 1985, defendant's motion for summary disposition as to plaintiffs' negligence claim was granted on the basis of governmental immunity, but defendant's motion for summary disposition as to plaintiffs' claim of intentional nuisance was denied.

Plaintiffs subsequently amended their complaint to more specifically plead intentional nuisance and to add a count on strict liability. On February 20, 1987, plaintiffs' strict liability claim was dismissed on the basis that the maintenance of a water system is not an inherently dangerous activity.

This case was assigned for trial on the sole remaining claim of intentional nuisance. On the date of trial, defendant renewed its motion for summary disposition pursuant to MCR 2.116(C)(10) as to plaintiffs' intentional nuisance claim. The motion was granted.

On appeal, plaintiffs claim that the trial court erred in granting summary disposition because there was a genuine issue of material fact as to whether defendant's construction and maintenance of its water mains constituted an intentional nuisance. Plaintiffs argue that the electrolysis problem was well known to defendant and defendant took no steps to rectify the danger.

Before we proceed to analyze the issue presented by plaintiffs, we must consider the essential ques-

tion of whether the intentional nuisance exception to governmental immunity survived the Supreme Court's decision in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139; 422 NW2d 205 (1988). There is currently a conflict concerning this issue among panels of this Court. In *Scott v Dep't of Natural Resources,* 169 Mich App 205, 208; 425 NW2d 518 (1988), the panel held that, following *Hadfield,* there is no intentional nuisance exception to governmental immunity. However, in *Li v Wong (On Remand),* 170 Mich App 256; 428 NW2d 36 (1988), the panel determined that the intentional nuisance exception to the doctrine of governmental immunity survived the Supreme Court's decision in *Hadfield.* The panel analyzed each of the opinions of the concurring justices and concluded:

> While the three-justice plurality led by Justice BRICKLEY clearly holds that there is no intentional nuisance exception to governmental immunity, we do not believe that the opinions of the concurring justices can be read as providing the crucial fourth vote to overrule prior precedent which recognizes the intentional nuisance exception. [*Li,* p 257.]

In *Garcia v City of Jackson (On Remand),* 174 Mich App 373, 376; 435 NW2d 796 (1989), the majority held:

> It is difficult to extract the conclusion that there is no intentional nuisance exception to governmental immunity since in *Hadfield,* which is the last word on the matter, the majority of the justices did not vote to override prior precedent concerning the intentional nuisance exception to governmental immunity so as to establish any new binding precedent for future cases. There was a majority for the result only.

We agree with the cases which hold that the intentional nuisance exception to governmental immunity survived the *Hadfield* decision because we cannot conclude that a majority of the justices voted to override prior precedent which recognized the intentional nuisance exception.

Prior to *Hadfield,* a conflict in decisions existed in this Court on the question whether an omission to act can be the basis of an intentional nuisance action. Whether this conflict still exists after *Hadfield* is questionable.

In *Landry v Detroit,* 143 Mich App 16; 371 NW2d 466 (1985), our Court reversed the trial court's order granting summary disposition because we found that the plaintiff's claim for an intentionally created nuisance in fact based upon omissions to act was valid. Likewise, in *Veeneman v Michigan,* 143 Mich App 694; 373 NW2d 193 (1985), our Court found that the plaintiff had sufficiently alleged an intentional nuisance based upon omissions to act so as to avoid the defendant's claim of governmental immunity.

In *Hadfield,* pp 194-195, 199, the lead opinion reversed this Court in both *Landry* and *Veeneman* because it determined that neither case fell within the trespass-nuisance exception.

In Justice BOYLE's concurring opinion, p 209, she stated that she agreed with the reversal of *Landry* and *Veeneman* because "plaintiffs cannot sustain either a private nuisance or public nuisance on the basis of the facts."

In Justice LEVIN's separate opinion, pp 209-210, he agreed with Justice BOYLE that "neither a private nuisance nor a public nuisance action may be maintained 'on the basis of the facts' in *Veeneman* and *Landry*."

We conclude that neither Justice BOYLE's nor

Justice LEVIN's opinion makes a clear statement on the issue of whether omissions to act can be the basis of an intentional nuisance claim.

In Justice ARCHER's opinion concurring in part and dissenting in part, p 213, he stated that he would hold that intentional nuisance is an exception to governmental immunity. He would affirm *Veeneman* and *Landry. Id.,* p 216. Justice ARCHER opined that in describing the scope of the exception it is important to focus on the responsibility of government for its "actions or omissions," and added that if the governmental unit "acts or fails to act" and thereby creates a nuisance, the governmental unit should be liable regardless of where the trespass or nuisance occurs.

Justice ARCHER's opinion makes it clear that he considers that omissions to act may be the basis of an intentional nuisance, provided that the requisite intent is established. *Id.*

We note that in *Garcia,* released after *Hadfield,* this Court found an intentional nuisance based upon omissions to act. Thus, we conclude that an intentional nuisance may be based upon omissions. However, although plaintiffs' claim of intentional nuisance in the instant case is based upon omissions to act, we need not consider the issue of omissions for purposes of deciding this case. The question which is dispositive of this appeal is whether a genuine issue of material fact existed on the intent required for an intentional nuisance claim. We conclude that the requisite intent was not established.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. When passing on such a motion, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. The party opposing summary

disposition has the burden of showing that a genuine issue of disputed fact exists. Giving the benefit of reasonable doubt to the nonmoving party, the court must determine whether the kind of record which might be developed will leave open an issue upon which reasonable minds might differ. The appellate court is liberal in finding a genuine issue of material fact. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988).

Intentional nuisance is a subdivision of the nuisance category known as nuisance in fact. *Martin v Michigan,* 129 Mich App 100, 108; 341 NW2d 239 (1983), lv den 422 Mich 891 (1985); *Hadfield,* p 153. A nuisance in fact is actionable by reason of circumstances and surroundings, and an act may be found to be a nuisance in fact where its natural tendency is to create danger and inflict injury to persons and property. The nuisance in fact is intentional if the creator intends to bring about the conditions which are in fact found to be a nuisance. *Rosario v City of Lansing,* 403 Mich 124, 142; 268 NW2d 230 (1978) (Moody, J., concurring). To establish intent, the plaintiffs must show that the defendant created or continued the condition causing the nuisance while they knew or must have known that injury was substantially certain to follow, i.e., deliberate conduct. *Guinan v Truscott,* 167 Mich App 520, 525-526; 423 NW2d 48 (1988). It is not enough that the person creating the nuisance knows that harm "might result." *Velmer v Baraga Area Schools,* 157 Mich App 489, 500; 403 NW2d 171 (1987), rev'd on other grounds 430 Mich 385; 424 NW2d 770 (1988).

Through the course of discovery, it was revealed that approximately two years prior to the incident involving McCracken a similar electrolysis leak had occurred in the same water main, about one block away from plaintiffs' home, which caused a

similar collapse of the ground. Plaintiffs contended that, despite defendant's knowledge of this prior incident and knowledge that another collapse was substantially certain to follow and cause injury, defendant took no action to inspect the area or rectify the danger, thus creating an intentional nuisance.

In granting defendant's motion for summary disposition, the court considered the deposition testimony of defendant's employee, Robert Wing, who for thirty-two years served as crew leader of defendant's water department. Wing testified that the leakage which caused the ground on plaintiffs' property to collapse was created by electricity in the ground emanating from the copper lines that run from the water main to the meter on the house. This electricity slowly eats away the steel bolts on the water main through a process known as electrolysis. Electrolysis causes a very small leak that washes the soil away a little at a time. It is difficult to detect electrolysis even by means of an electronic-listening device because it is silent. Unless and until the soil is washed away at the surface, the only way to monitor a water main for electrolysis is by actually digging down six to twelve feet with a backhoe and uncovering it.

The court found that the undisputed testimony of Wing indicated that there was no way to discover whether electrolysis was occurring in a certain section of the water main without digging down to the pipe. The court held that there was no duty on the city to dig up different areas to determine whether or not a leak was occurring. The court found no evidence to indicate that defendant either knew or should have known that a dangerous condition existed beneath plaintiffs' property.

The facts of the case indicate that defendant had

knowledge of a similar leak in the same water main produced by electrolysis, which caused the ground to collapse one block away from plaintiffs' home. Further, defendant knew or should have known that electrolysis would probably cause other leaks in the water main. Nevertheless, this does not establish the requisite intent. As the Court stated in *Freedman v Oak Park,* 170 Mich App 349, 356; 427 NW2d 557 (1988), lv den 431 Mich 863 (1988):

> [A]lthough some decisions of this Court have considered a "knowledge" standard to be an appropriate test for the intent element of a nuisance claim, the standard applied has been whether defendant knew or must have known that harm to a plaintiff was substantially certain to follow, as distinguished from the lesser standard of whether defendant knew or should have known of a defective condition.

We conclude that defendant could not know that harm was substantially certain to occur in an area unless they dug up and exposed for inspection the entire water main. A municipality is not required to take such drastic measures. *A J Brown & Son, Inc v Grand Rapids,* 265 Mich 465, 470; 251 NW 561 (1933). Defendant's failure to do so does not rise to the level of a "deliberate act by the governmental agency to create the complained-of condition." *Rosario,* p 143. We find no evidence of the requisite intent to bring about the complained-of condition.

Affirmed.